# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| George Stanley Branham, II, | ) C/A No. 5:11-1216-TMC-KDW |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Report and Recommendation |
| | ) |
| Director Peggy Spivey, Major Murry Hudson, Major | ) |
| Crystal Hodge and Captain Blackmon, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on the Motion for Summary Judgment filed by Defendants on December 22, 2011. ECF No. 61. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on December 27, 2011, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 62. Plaintiff responded to Defendants' motion on January 30, 2012, and the Defendant replied on February 9, 2012, making this motion ripe for consideration. ECF Nos. 69, 70. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because these motions are dispositive, a Report and Recommendation is entered for the court's review.

## I.     Background

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Plaintiff brought this action under 42 U.S.C. § 1983 seeking damages and declaratory relief for alleged violations that occurred while he was a pretrial detainee at the Kershaw County Detention Center ("KCDC"). ECF No. 1. Plaintiff filed his initial Complaint on May 23, 2011. ECF No. 1. Plaintiff submitted an Amended Complaint adding additional claims on June 29, 2011. ECF No. 12. In his Complaints, Plaintiff alleges constitutional violations and other deprivations against Defendants, including excessive force and medical neglect. ECF Nos. 1, 12. Specifically, Plaintiff complains of the following while a pretrial detainee at KCDC: (1) Plaintiff was denied medical treatment for kidney stones, ECF No. 12 at 2-3; (2) Defendants took away Plaintiff's medically prescribed orthopedic lift and boot that Plaintiff was using to alleviate pain and discomfort due to his deteriorating hip joint condition that resulted in a 3.5 inch discrepancy between Plaintiff's left and right legs, ECF No. 12 at 3; (3) a guard named "Ms. Billie" disclosed Plaintiff's charges to other detainees knowing that it would likely expose Plaintiff to harm and harassment by other detainees, ECF No. 12 at 4; and (4) "Ms. Billie" sprayed mace into Plaintiff's solitary confinement cell on several occasions after he filed a grievance complaining that she had disclosed his charge to other detainees, ECF No. 12 at 4. Plaintiff requests relief in the amount of $75,000 for compensatory damages against each Defendant jointly and severally; punitive damages in the amount of $75,000 against each Defendant; jury trial; declaratory relief and costs. ECF No. 12 at 6.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the

court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). When the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-23.

III.    Analysis

A.  Defendants' Motion For Summary Judgment

Defendants contend that they are entitled to summary judgment on Plaintiff's claim because 1) Plaintiff did not exhaust his administrative remedies as to his claims for deliberate indifference to his kidney stone condition and acts of excessive force, 2) neither of Plaintiff's medical conditions constituted a serious medical need, and even if they did, Defendants were not deliberately indifferent to Plaintiff's medical needs, 3) there is no evidence that Defendants had actual or constructive knowledge of the guard's acts that is necessary to establish supervisory liability,  and 4) Defendants are entitled to qualified immunity.  ECF No. 61-1 at 2-3.

1.          Exhaustion of Administrative Remedies

Defendants contend that they are entitled to summary judgment on Plaintiff's claims for excessive force and deliberate indifference to his kidney stone condition because Plaintiff  has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). ECF No. 61-1 at 4-6. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739). Further, pretrial detainees, which Plaintiff was at

all times relevant to these claims, are also required to exhaust administrative remedies. *See* 42 U.S.C.A. 1997e(h) (defining "prisoner" for PLRA purposes as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."); *see also Rutland v. Dewitt*, C/A No. 8:09-13-SB, 2010 WL 288217, *5 & n.1 (D.S.C. Jan. 25, 2010) (applying PLRA to pretrial detainee).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under federal law, including § 1983. *Woodford*, 548 U.S. at 81.

Here, Defendants have produced evidence that Plaintiff has not exhausted his administrative remedies as to his deliberate indifference to his kidney stones condition and excessive force claims. ECF No. 61-3 at 2-4. Specifically, Defendants attest that Plaintiff's file was reviewed and his file did not contain any grievances regarding his kidney stone condition or Guard "Billie" disclosing his charges to other inmates or spraying his cell with mace on any occasion. *Id.* In his response to Defendants' Motion for Summary Judgment, Plaintiff offers Declarations by other inmates, David E. Wilson, Jr. and David Hartzler, stating that Plaintiff

filed several grievances in regards to medical neglect and past abuse and ongoing harassment. ECF No. 68-1. The vague and general allegations of these Declarations, however, do not specifically reference Plaintiff's claims in his Amended Complaint and are therefore insufficient to overcome the undisputed evidence that Plaintiff has failed to exhaust his administrative remedies on his kidney stone medical indifference claim and his excessive force claim. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (finding that the opposing party to summary judgment must come forward with specific facts showing that there is a genuine issue for trial). Therefore, because Plaintiff has failed to refute Defendants' evidence that he has not exhausted the administrative remedies, the undersigned recommends that summary judgment be granted as to these claims.

2.      Supervisory Liability For Excessive Force Claim

Defendants contend they cannot be held liable for Plaintiff's excessive force claims under a theory of supervisory-liability because Plaintiff failed to make any specific allegations against Defendants. ECF No. 12. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted). To successfully pursue such a theory, Plaintiff would have to demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.*, *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

In his Amended Complaint, Plaintiff contends that a former guard known as "Ms. Billie" made the Plaintiff's charge known to other inmates and therefore placed Plaintiff in a situation that the guard knew was likely to expose Plaintiff to serious physical harm and harassment by other inmates, and that Plaintiff did suffer physical harm and placement in solitary confinement. ECF No. 12 at 4. Plaintiff also contends that after he wrote a grievance complaining of Ms. Billie's action that "Ms. Billie" sprayed mace into Plaintiff's solitary confinement cell on several occasions, causing Plaintiff's nose and eyes to burn, and also causing Plaintiff to cough and making it difficult for him to breathe. *Id.*

Plaintiff's Amended Complaint does not allege that the named Defendants were personally responsible for, or personally involved in, any of the excessive force incidents other than having supervisory roles as KCDC director and officers. Further, Plaintiff does not aver that the Defendants were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of Ms. Billie. Defendants offer affidavits, in support of their Motion for Summary Judgment, that establish that Plaintiff did not file any grievances concerning "Ms. Billie" and that none of the Defendants had knowledge of "Ms. Billie's" alleged conduct either through the verbal or written complaint by Plaintiff, complaints by other detainees, or personal observations or receipt of reports of such behavior. ECF No. 61-3; 61-19; 61-20; 61-22; 61-23. In response to these contentions, Plaintiff offers Declarations from KCDC prisoners regarding past abuse and ongoing harassment of Plaintiff. ECF No. 68-1. Plaintiff also points out that there is no affidavit from Ms. Billie stating that she denies the allegations and that he plans to call Ms. Billie as a witness at trial. ECF No. 69 at 4. These bald allegations, without more, however, are insufficient to establish a viable claim that Defendants were personally involved in any excessive

force incident that caused actionable injury to Plaintiff.    *See Matsushita Elec. Indus. Co.*, 475 U.S. at  586-87.  To the extent Plaintiff attempts to rely on the doctrine of supervisory liability as to his excessive force claims, the undersigned recommends that summary judgment be granted to Defendants as to this claim.

3.    Deliberate Indifference to Medical Needs

In order to prevail on a cause of action for deliberate indifference to medical needs, Plaintiff must show that the named Defendants were deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Deliberate indifference to a serious medical need requires proof that each Defendant knew of and disregarded the risk posed by the Plaintiff's objectively serious medical needs.  *Farmer*, 511 U.S. at  837.   In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 182–83 (4th Cir.1986). None of the Defendants named in Plaintiff's Amended Complaint are medical professionals; therefore, Plaintiff must also demonstrate that Defendants (1) were personally involved in the denial of treatment, (2) deliberately interfered with the prison doctor's treatment or (3) tacitly authorized or were indifferent to the prison doctor's misconduct. *Miller v. Beorn*, 896 F.2d at 854.

Plaintiff alleges Defendants Spivey, Hudson, Hodge, and Blackmon failed to respond to Plaintiff's needs for medical attention relating to Plaintiff's diagnosis of kidney stones and Plaintiff's need to wear an orthopedic lift as a result of Plaintiff's deteriorating hip condition.

ECF No. 12 at 2. Defendants submit that they are entitled to summary judgment as to these claims. ECF No. 61-1 at 6-14.

    a.   Deliberate Indifference to Plaintiff's Kidney Stone Condition

In his Amended Complaint, Plaintiff contends that his immediate need for medical attention was ignored for two days by Defendants although Plaintiff made known his need for medical attention, verbally and by written request. ECF No. 12 at 2. Plaintiff contends that his condition and pain were obvious and that he suffered for two days before being taken to the local medical center where he was diagnosed with kidney stones. ECF No. 12 at 3. Plaintiff contends that after he was treated at the medical center he was referred to a specialist and that this referral was ignored by Defendants. *Id.* Plaintiff contends that he made several written requests asking to be seen by the specialist and that his requests were denied. *Id.*

In support of their Motion for Summary Judgment on Plaintiff's kidney stone claim, Defendants assert that there was no delay in getting Plaintiff medical treatment. Defendants offer documentation that Plaintiff was seen by KCDC medical personnel and the medical center on the same day that he complained of back pain and mid-abdomen pain. ECF No. 61-3 at 4-5. Defendants further contend that although Plaintiff was referred to another physician for follow-up care, Plaintiff's sole medical treatment consisted of Plaintiff forcing fluids and waiting for the stone to pass. ECF No. 61-3 at 5. Defendants offer documentation showing that Plaintiff was advised that his costs for the follow-up visit was $200 and that Plaintiff did not request to be seen by the physician to whom he was referred. *Id.* Defendants note that Plaintiff's file did not contain any requests regarding his issues with the kidney stones until Plaintiff reported that he passed the stone and inquired about how much longer he would experience pain. ECF No. 61-3 at 5.

Plaintiff was advised by medical personnel that he should contact them again if the pain continued after a week. *Id.* Defendants state that there were no other requests or further documentation regarding the kidney stone issue in Plaintiff's file. *Id.* In response to Defendants' Motion for Summary Judgment as to this claim, Plaintiff has not proffered any responsive facts that indicate summary judgment would be inappropriate. Because Plaintiff has not established a viable claim of deliberate indifference as to his kidney stone condition, the undersigned recommends that summary judgment be granted as to this claim.

b. Deliberate Indifference to Plaintiff's Hip Condition

i. Defendants Hodge[2] and Blackmon

Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding medical treatment for his hip condition against Defendants Hodge and Blackmon, who are non-medical personnel. Plaintiff does not allege that these officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Therefore, the undersigned recommends that summary judgment be granted as to this claim for these Defendants.

ii. Defendants Spivey and Hudson

The Fourth Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008). A medical condition is also serious if a delay in treatment causes a lifelong handicap or

---

[2] Defendants note in their Motion for Summary Judgment that Defendant Hodge's only connection to Plaintiff's hip condition claim was that Hodge denied Plaintiff's grievance dated June 6, 2011 in which Plaintiff asked for the return of his boots. No liability exists under § 1983 for a prison administrator's response to a grievance or appeal. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Plaintiff alleges that Defendants Spivey and Hudson were aware that Plaintiff had a deteriorating hip joint and that, prior to Plaintiff's incarceration, Plaintiff was prescribed an orthopedic lift to wear inside of a boot to compensate for the shortness of his left leg. ECF No. 12 at 3. Plaintiff further notes that his orthopedic lift and boot were approved by a KCDC-contracted doctor at the time of his admission and that his hip condition is so obvious that even a lay person would easily recognize his necessity for boots, orthopedic lift and medical care. ECF No. 12 at 3-4. Plaintiff explained Defendants Spivey and Hudson took his boots and orthopedic lift seven months after his initial detention. *Id.*

Defendants aver in their Motion for Summary Judgment that Plaintiff's hip condition is not a serious medical need because there is nothing in Plaintiff's records indicating that the boots had been prescribed by a physician. ECF No. 61-3 at 6. Defendants also note that Plaintiff did not request medical treatment for back or hip pain following the removal of his boot and therefore there is no evidence that Plaintiff's condition was serious, much less life threatening. ECF No. 61-1 at 10-11.

Here, even if Plaintiff created genuine issues of material fact regarding whether Defendant Spivey and Hudson were personally involved with denying Plaintiff treatment for a serious medical condition, based on a review of the record, Plaintiff is not able to establish that Defendants Spivey and Hudson were deliberately indifferent to his medical condition. To establish deliberate indifference, plaintiff must show 1) that the defendant had actual knowledge

of the risk of harm to the Plaintiff and 2) that the Defendant recognized that his or her actions were insufficient to mitigate that risk of harm. *Iko,* 535 F.3d at 241.

Plaintiff avers that his hip condition was made known to the supervising staff at KCDC during Plaintiff's booking, and at that time Plaintiff was allowed to keep his orthopedic lift and boots after being approved by KCDC's contract doctor. ECF No. 12 at 3. Plaintiff contends that his boots and orthopedic lift were taken seven months later by order of Defendants Spivey and Hudson. ECF No. 12 at 3. Plaintiff insists that he wrote several grievances requesting that his boots and orthopedic lift be returned. *Id.* Plaintiff contends that he also informed Defendants that walking without the aid of his orthopedic lift and boots caused him to have chronic and serious pain in his lower back and left hip. *Id.* Plaintiff notes that he was also refused pain medication. ECP No. 12 at 4. Plaintiff contends that Defendants continued to deny Plaintiff's access to treatment and that this meets the standard of deliberate indifference. *Id.*

In support of their Motion for Summary Judgment, Defendants contend that Plaintiff cannot make the required showing that "Defendants were deliberately and intentionally indifferent to his needs of which they were aware at the time." ECF No. 61-1 at 10. Defendants contend that Plaintiff's boots were taken from him because it is against KCDC's policy for an inmate to wear steel toe boots. ECF No. 61-1 at 9. Defendants allege that the evidence shows that they "went out of their way" to get Plaintiff appropriate footwear in place of the boots, including contacting Plaintiff's family and requesting that they purchase Plaintiff special tennis shoes, and constructing a sandal so that Plaintiff could wear his orthopedic lift. ECF No. 61-1 at 11-12. Defendants also argue that the delay in providing appropriate footwear was not

intentional, because the delay was caused by Plaintiff's family and Defendants were not responsible for buying Plaintiff's shoes.  ECF No. 61-1 at 11-12.

In response to Defendants' Motion for Summary Judgment, Plaintiff contends that Defendant Spivey approved  of Plaintiff wearing the lift in his boot as long as Plaintiff remained in solitary confinement.  ECF No. 69 at 2.   Plaintiff contends that he was permitted to wear his orthopedic lift and boot in solitary confinement for seven months before they were taken from him.  *Id.* After Defendants took his boots he was moved to the general prison population.  *Id.* Plaintiff asserts that Defendants became liable for his pain and suffering and physical damage to his body after they deprived him of the use of his orthopedic lift.  ECF No. 69 at 2.  Plaintiff also argues that he was not provided a sandal constructed by Defendant Hudson, Defendant Hudson was not qualified in the area of medical prosthesis, and that "any prosthesis he fabricated without the supervision of a qualified medical doctor would be questionable at best." ECF No. 69 at 3. Defendants reply to Plaintiff's arguments by contending that none of these assertions create a genuine issue of fact as to whether Plaintiff had a serious medical need of which the Defendants were aware and to which they were deliberately indifferent.  ECF No. 70 at 1-2.

Although the parties dispute the appropriateness of Plaintiff's continued use of his boots in conjunction with the orthopedic lift and the appropriateness (and existence) of the modified sandal, Plaintiff has not been able to create a genuine issue of fact concerning whether Defendants were deliberately indifferent to a serious medical need. The record indicates that Defendants had a legitimate penological objective for confiscating Plaintiff's boots and that Defendants did not act with the intent to cause Plaintiff harm or with a reckless disregard of a risk of harm when Plaintiff's boots were confiscated.  *See Grayson v. Peed*, 195 F.3d 692, 695

(4th Cir. 1999) (finding that the denial of attention for a serious medical need must be both deliberate and without penological objective).  Therefore the undersigned recommends that summary judgment be granted as to this claim.

  4. Qualified Immunity

  Defendants also seek summary judgment on the grounds that they are entitled to qualified immunity. ECF No. 61-1 at 18-21.  The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).  As explained by the Fourth Circuit in *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992), "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."

  For the reasons detailed above, Plaintiff did not establish a violation of his constitutional rights. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record shows that Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the

discretionary exercise of their respective professional judgment. The undersigned recommends granting Defendants' Motion for Summary Judgment as to all Plaintiff's claims.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment, ECF No. 61, be GRANTED.

IT IS SO RECOMMENDED.

June 25, 2012                                              Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**